UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
The Estate of GENNARO SALVATORE IZZO, GENNARO V. IZZO
and the heirs of GENNARO SALVATORE IZZO,

                    Plaintiffs,

    -against-

VANGUARD FUNDING, LLC f/k/a FIDELITY BORROWING
MORTGAGE BANKERS, URBAN FINANCIAL GROUP, INC. a/k/a
URBAN FINANCIAL OF AMERICA, REVERSE MORTGAGE
SOLUTIONS INC. a/k/a SECURITY ONE LENDING, MCCABE
WEISBERG & CONWAY, P.C., NATALIE GIRALDO, ESQ., DEANA
CHELI, ESQ., TERRANCE J. MCCABE, ESQ., MARC S. WEISBERG,
ESQ., EDWARD D. CONWAY, ESQ., LISA L. WALLACE, ESQ.,
LAURA H.G. SULLIVAN, ESQ., JANET Z. CHARLTON, ESQ.,
JOSEPH FILIPONE, RICHARD CACCIATORE, NANCY
RADELMAN, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS), DONNA AKINRELE, ESQ., LAURA
SMITH, John Does 1-10 and Jane Does 1-10, which Doe defendants are
not now known to the plaintiffs who played a roles on the affairs of
the enterprise and participated in the operation and/or management of
the enterprise,

                  Defendants.
--------------------------------------------------------------------------------x

FILED
CLERK

12:50 pm, Mar 30, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Memorandum of
Decision & Order
15-cv-7084 (ADS)(GRB)

APPEARANCES:

**David A. Bythewood, Esq.**
*Attorney for the Plaintiffs*
85 Willis Avenue, Suite J
Mineola, NY 11501

**Westerman Ball Ederer Miller & Sharfstein LLP**
*Attorneys for the Defendants Vanguard Funding, LLC f/k/a Fidelity Borrowing Mortgage Bankers; Joseph Filipone; and Richard Cacciatore*
1201 RXR Plaza
Uniondale, NY 11556
        By:   Richard F. Harrison, Esq., Of Counsel

**Fein Such & Crane, LLP**
*Attorneys for the Defendants Urban Financial Group, Inc. a/k/a Urban Financial of America; Reverse Mortgage Solutions a/k/a Security One Lending; Mortgage Electronic Registration Systems, Inc. (MERS); and Laura Smith*
1400 Old Country Road, Suite C-103
Westbury, NY 11590
        By:   Andre S. Haynes, Esq., Of Counsel

**McCabe Weisberg & Conway, PC**
*Attorneys for the Defendants McCabe Weisberg & Conway, PC; Natalie Giraldo, Esq.; Deanne Cheli, Esq.; Terrance J. McCabe, Esq.; Marc S. Weisberg, Esq.; Edward D. Conway, Esq.; Lisa L. Wallace, Esq.; Laura H.G. Sullivan, Esq.; Janet Z. Charlton, Esq.; and Donna Akinrele, Esq.*
145 Huguenot Street, Suite 210
New Rochelle, NY 10801
      By:    Kiyam J. Poulson, Esq., Of Counsel

<u>NO APPEARANCE:</u>

**Nancy Radelman**
*Defendant*

**SPATT, District Judge:**

On December 11, 2015, the Estate (the "Estate") of Gennaro S. Izzo (the "Decedent"), by its Executor Gennaro V. Izzo ("G.V. Izzo"), on its own behalf and on behalf of unnamed heirs (collectively, the "Plaintiffs"), commenced this action against the Defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its implementing regulations, namely, 12 C.F.R. § 266.33; the federal regulations pertaining to the Home Equity Conversion Mortgage statute, namely, 24 C.F.R. § 206; and multiple theories of New York statutory and common law liability.

On July 2, 2016, the Court dismissed the complaint for failing to comply with Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 8 and granted the Plaintiffs leave to replead. *See Estate of Izzo v. Vanguard Funding, LLC*, No. 15-cv-7084, 2016 U.S. Dist. LEXIS 86567 (E.D.N.Y. July 2, 2016) (Spatt, J.).

On July 25, 2016, the Plaintiffs filed an amended complaint.

Presently before the Court is a series of motions seeking to dismiss the amended complaint.

Namely, on August 2, 2016, the Defendants Vanguard Funding, LLC, formerly known as Fidelity Borrowing Mortgage Bankers ("Vanguard"); Joseph Filipone ("Filipone"); and Richard Cacciatore ("Cacciatore," together with Vanguard and Filipone, the "Vanguard Defendants") renewed an earlier-filed motion to dismiss the pleading under Fed. R. Civ. P. 12(b)(1) and 12(b)(6),

on the grounds that federal subject matter jurisdiction is lacking and that the amended complaint fails to state a claim for relief. *See* Docket Entry ("DE") [74, 94].

On August 15, 2016, the Defendants Urban Financial Group, Inc. a/k/a Urban Financial of America ("Urban Financial"); Reverse Mortgage Solutions a/k/a Security One Lending ("Security One"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and Laura Smith ("Smith," together with Urban Financial, Security One, and MERS, the "Urban Defendants") filed a motion to dismiss under Rule 12(b)(6), contending that the amended complaint fails to state a claim for relief. *See* DE [99].

Also on August 15, 2016, the Defendants McCabe Weisberg & Conway, PC (the "McCabe Law Firm"); Natalie Giraldo, Esq. ("Giraldo"); Deanne Cheli, Esq. ("Cheli"); Terrance J. McCabe, Esq. ("McCabe"); Marc S. Weisberg, Esq. ("Weisberg"); Edward D. Conway, Esq. ("Conway"); Lisa L. Wallace, Esq. ("Wallace"); Laura H.G. Sullivan, Esq. ("Sullivan"); Janet Z. Charlton, Esq. ("Charlton"); and Donna Akinrele, Esq. ("Akinrele," together with the McCabe Law Firm, Giraldo, Cheli, McCabe, Weisberg, Conway, Wallace, Sullivan, Charlton, and Akinrele, the "Law Firm Defendants") filed a motion to dismiss under Rule 12(b)(6) on the ground that the amended complaint fails to state a claim for relief. *See* DE [100].

For the reasons that follow, the Court grants the Defendants' motions to dismiss as to the federal claims over which the Court has original jurisdiction, and declines to exercise supplemental jurisdiction over the remaining state law causes of action.

## I. BACKGROUND

### A. Materials Considered

Except where otherwise noted, the facts are drawn from the amended complaint and construed in favor of the Plaintiffs.

However, as cautioned in the Court's July 2, 2016 Decision & Order; and consistent with controlling authority regarding the form and content of pleadings, in considering these motions the

Court has disregarded the abundance of conclusory and argumentative allegations, as well as all other non-factual content contained in the amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The Court has found that after setting aside this surplussage, few well-pled facts remained.

Thus, in its discretion, the Court has also relied on the extrinsic evidence submitted by the parties to aid in its understanding of the underlying facts. In particular, the Court has reviewed and considered relevant hospital records; mortgage documents which form the heart of the Plaintiffs' complaint; and publicly-available court filings in a related foreclosure action, all of which were either appended to the original complaint, or incorporated by reference and relied upon by the Plaintiffs in framing the amended complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016).

B.      **The Relevant Facts**

On April 26, 2011, the Decedent, then 80 years old, was admitted to South Nassau Communities Hospital. Admission records reflect that, at the time of the Decedent's arrival, hospital personnel were unable to ascertain his symptoms due to "AMS," which is sometimes shorthand for "altered mental state." However, according to the amended complaint, at the time of his admission, the Defendant suffered from numerous ailments that left him immobile, confined to his bed, and unable to speak. For months, he had been under round-the-clock medical care.

The morning after his admission, on April 27, 2011, at approximately 7:30 A.M., an attending physician at the hospital signed a form attesting to the fact that, due to "Dementia," the Decedent lacked the capacity to make vital medical decisions, such as whether to resuscitate him or withdraw him from life support in the case of an emergency.

On April 29, 2011, at 6:30 P.M. a second licensed practitioner signed the same form, concurring with the prior assessment of the Decedent's capacity.

In view of the Decedent's condition, his son, G.V. Izzo, was identified as the Decedent's surrogate health care decision-maker.

Sadly, it appears that the Decedent never left the hospital. A death certificate shows that on May 7, 2011, at 9:30 A.M., he died of acute respiratory failure, secondary to bronchopneumonia and myelodysplastic syndrome.

The gravamen of this case involves certain acts attributed to the Decedent during the period of time, immediately preceding his death, when the staff at South Nassau Communities Hospital apparently believed he was incapacitated. Specifically, the record contains documentation purportedly reflecting a reverse mortgage transaction between the Decedent and the Defendant Vanguard on April 30, 2011.

In this regard, the record includes a Home Equity Conversion Fixed Rate Note (the "Note"), which, in turn, references a Home Equity Conversion Loan Agreement (the "Loan Agreement"). Apparently, under the terms of the Loan Agreement, Vanguard agreed to make capital advances totaling $570,000 to the Decedent, which the Decedent obligated himself to repay, with interest, by executing the Note.

The record also includes a Fixed Rate Home Equity Conversion Mortgage (the "Mortgage"), pursuant to which the Decedent apparently pledged his home at 121 Oak Street in Lynbrook (the "Lynbrook Property") as collateral to secure repayment of the Note. Relevant here, Section 9(a) of the Mortgage provides that Vanguard may accelerate the debt and require immediate payment-in-full of the Note upon the Decedent's death, so long as none of his heirs continues utilizing the Lynbrook Property as his or her principal residence.

The Court further notes that, although the Mortgage identifies Vanguard as the lender, the Mortgage was issued to the Defendant MERS, in the capacity of "nominee" – an apparently administrative title – for Vanguard.

Of prime importance, each of these documents was purportedly signed by the Decedent on April 30, 2011. However, in this lawsuit, the Plaintiffs allege that the Decedent's signature was forged in all cases.

Each document was also purportedly witnessed by the Defendants Filipone and Cacciatore, as agents for Vanguard, and notarized by the Defendant Nancy Radelman ("Radelman") on the same date, namely, April 30, 2011.

By means not specified in the amended complaint or supporting materials, it appears that sometime between May 7, 2011 and August 29, 2011, Urban Financial received notice of the Decedent's death.

Thus, on August 29, 2011, the Default Department at Urban Financial sent a letter to G.V. Izzo stating, in pertinent part, the following:

> We would like to extend our condolences for your loss. Thank you for keeping us informed on the status of the [Lynbrook] property. If you have not already done so, please forward a copy of the death certificate and proof of probate documents as soon as possible for our file.
>
> There will be no further advances made from the account. However, please be aware that Interest and Service Fees will continue to accrue until the mortgage is paid in full. It is in the best interest of the estate to repay the loan as soon as possible. The taxes and homeowners insurance must be current and are the responsibility of the estate. We will need the executor/administrator of the estate to provide us with the estate tax identification number for IRS reporting purposes.
>
> As of 8/29/11, the amount required to payoff the loan balance in full by 9/28/11 is $271,186.46. If you believe that this figure is more than the value of the property, it is your responsibility to arrange for an appraisal at your expense.

It is not clear what interest Urban Financial had in the Mortgage at the time it sent the August 29, 2011 letter. In fact, it was not until two years later, on September 27, 2013, that the original mortgagee, MERS, assigned its interest in the Mortgage to Urban Financial by way of a written Assignment of Mortgage (the "Assignment"). The Defendant Laura Smith, in her capacity as an Assistant Vice President of MERS, executed that Assignment on behalf of the company.

It is also not clear how any of these entities actually learned of the Decedent's death. Even viewed in the Plaintiffs' favor, the August 29, 2011 letter would appear to support the inference that G.V. Izzo acknowledged the existence of the Note and Mortgage, and duly advised the lender of his father's death. While generally consistent with the Plaintiffs' allegation that G.V. Izzo handled most of his ailing father's financial affairs, G.V. Izzo's acknowledgment of the Note and Mortgage would seem to contradict the Plaintiffs' core allegation that the Decedent's signature was forged by Vanguard and its agents, thereby rendering the transaction invalid.

In any event, on or about February 20, 2014, Urban Financial, as the assignee of the Mortgage, commenced a foreclosure action in the New York Supreme Court for Nassau County (the "Foreclosure Action"), naming as a Defendant G.V. Izzo, in his capacity as the Executor of the Decedent's Estate. Relevant here, the Summons and Complaint were signed by the individual Defendant Natalie Giraldo of the McCabe Law Firm, as counsel for Urban Financial. A related Notice of Pendency, also signed by Giraldo, was filed against the Lynbrook Property the same day.

In general, the complaint in the Foreclosure Action alleged that the Decedent's Estate had been in default under the Note and Mortgage since at least May 7, 2011.

Affidavits of service indicate that, on February 28, 2014, personal service of the Summons and Complaint in the Foreclosure Action was made on G.V. Izzo at his home at 12 Allen Street in Lynbrook. On March 6, 2014 and March 21, 2014, respectively, an additional copy of the Summons and the typewritten notice of foreclosure required by Section 1303 of the New York Real Property Actions and Proceedings Law were mailed to G.V. Izzo at his home address.

After G.V. Izzo failed to answer or otherwise appear in the Foreclosure Action, on January 7, 2015, Urban Financial filed a motion for a default judgment and appointment of a referee to compute the amounts due to Urban Financial under the Note and Mortgage. The motion papers were signed by the individual Defendant Donna Akinrele of the McCabe Law Firm, as counsel for Urban Financial.

This motion was apparently supported with an affidavit by Laura Smith, which does not appear to be a part of the current record.

On May 12, 2015, Justice Thomas A. Adams of the State Supreme Court signed an Order of Reference, finding G.V. Izzo in default and referring the Foreclosure Action to Referee Michael Annibale, Esq. for a computation of damages.

Pursuant to this order, on or about October 9, 2015, Smith submitted a second affidavit, this time attesting to the amounts claimed to be due and owing by the Estate to Urban Financial.

The Court pauses to note that Smith's role in these underlying events is somewhat unclear. As noted above, on September 27, 2013, acting in the capacity of Assistant Vice President of MERS, Smith executed the Assignment of the Mortgage in favor of Urban. However, it appears that she may have been on both sides of the transaction, as she continued signing pertinent documentation after the Assignment in a different capacity, namely, as an Assistant Vice President of the Defendant Security One, which, in turn, was assertedly acting as the attorney-in-fact for Urban Financial.

In any event, on November 6, 2015, Referee Annibale issued a report, finding that, as of August 20, 2015, the sum of $389,370.57 was owed to Urban Financial under the Note and Mortgage, together with various expenses, attorneys' fees, and continuing interest through the date title closed on an eventual sale of the Lynbrook Property.

On November 10, 2015, Urban Financial filed a motion, seeking to confirm Annibale's report and for entry of a final judgment of foreclosure and sale. These motion papers were signed by the individual Defendant Deana Cheli of the McCabe Law Firm, as counsel for Urban Financial.

The amended complaint lacks any further allegations regarding the status and/or resolution of the Foreclosure Action, other than to state that the Defendants, in furtherance of a racketeering scheme, "fraudulently utiliz[ed] the foreclosure process and [ ] deceiv[ed] the Courts of the State of New York in order to gain a judgment from said courts to steal the assets from the estate of Gennaro Salvatore Izzo." Am. Compl. ¶ 133.

Despite this, the Court notes that publicly-available records shed light on the current state of affairs in the Foreclosure Action. It appears that, sometime after Urban Financial filed its motion for a final judgment of foreclosure and sale, the Estate appeared in that proceeding and moved to dismiss the complaint. By Short Form Order dated March 15, 2016, Justice Adams determined that a triable issue of fact existed as to the Decedent's competency on the date the Note and Mortgage were allegedly executed. Thus, the court denied the motion by Urban Financial for a final judgment in its favor, and denied without prejudice the Estate's motion to dismiss, with leave to renew following discovery.

Subsequently, on October 26, 2016, Justice Adams issued a second Short Form Order, this time granting a request by the Estate to vacate its default in the Foreclosure Action and to file a late answer. At this juncture, on the current record, the Court is unable to determine whether the Estate has interposed an answer to the foreclosure complaint. However, it is undisputed that the Foreclosure Action is still pending.

On December 11, 2015, with the Foreclosure Action underway for the better part of two years, the Plaintiffs commenced this federal action, which, it seems, is based on substantially the same nexus of operative facts. However, to obtain federal jurisdiction, the Plaintiffs principally alleged a violation of the civil RICO statute, on the theory that, with knowledge that the Decedent was on his deathbed, the Defendants colluded to repossess the Lynbrook Property by means of a falsified mortgage transaction.

The Plaintiffs also alleged federal claims based on: (1) a violation of the FDCPA, on the theory that the Defendants fabricated and then proceeded to try to collect from the Decedent and his Estate an unlawful debt, namely, the balance due on the Note; (2) a violation of TILA as against Urban Financial, on the theory that Urban Financial failed to provide timely notice of the assignment of the Mortgage, as required under section 1641(g) of the statute; (3) a violation of the federal regulations pertaining to mandatory disclosures under TILA, namely, 12 C.F.R. § 266.33; and (5) a violation of

the federal regulations relating to the Home Equity Conversion Mortgage statute, namely, 24 C.F.R. § 206.41, on the theory that the Defendants failed to provide to the Decedent mandatory loan counseling in connection with the reverse mortgage transaction.

The Plaintiffs also allege claims arising under New York State law, including: (1) a violation of Section 349 of the New York General Business Law as against all the Defendants; (2) negligence as against MERS; and (3) negligent supervision as against all the Defendants.

As noted above, all the Defendants – except for Radelman, who has not appeared in this action – have moved to dismiss the amended complaint.

## II. DISCUSSION

### A. As to Whether Subject Matter Jurisdiction is Lacking

Initially, the Court will address the argument, advanced primarily by the Vanguard Defendants, that federal subject matter jurisdiction is lacking in this case.

First, the Vanguard Defendants contend that the amended complaint fails to sufficiently allege a basis for invoking the Court's original jurisdiction. This argument lacks merit.

Admittedly, the Plaintiffs' statement of jurisdiction is somewhat confused, and, as the Vanguard Defendants point out, makes reference to at least one apparently inapplicable statute. Also, the Plaintiffs assert, apparently incorrectly, that the Court has diversity jurisdiction under 28 U.S.C. § 1332. In actuality, the facts alleged in the amended complaint seem to contradict the notion that complete diversity of citizenship exists among the parties.

Nevertheless, paragraph 25 of the amended complaint clearly alleges that federal question jurisdiction exists under 28 U.S.C. § 1331, which indisputably confers upon the Court authority to adjudicate the Plaintiffs' claims arising under federal statutes such as RICO, FDCPA, TILA, and their implementing regulations, together with any state law claims over which the Court elects to exercise supplemental jurisdiction. The Vanguard Defendants failed to set forth any substantive argument to the contrary.

Accordingly, to the extent that the Vanguard Defendants seek to dismiss the amended complaint under FED. R. CIV. P. 12(b)(1) on the ground that the Plaintiffs failed to allege a basis for the Court's original jurisdiction, their motion is denied.

On this subject, the Court notes that, although the Vanguard Defendants further contend that the Plaintiffs lack standing to enforce the civil RICO statute, this argument lacks a jurisdictional dimension, and is therefore not appropriate to consider under Rule 12(b)(1). *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129-30 (2d Cir.), *cert. denied*, 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed. 2d 424 (2003) (recognizing that "statutory standing under RICO is not jurisdictional").

**B.     As to Whether the Plaintiffs' Claims are Precluded by Collateral Estoppel**

Next, the Court will address the argument, advanced primarily by the Urban Defendants, that the bulk of the Plaintiffs' claims in this action are barred by the preclusive effect of prior orders in the Foreclosure Action. Specifically, the Urban Defendants refer to the May 12, 2015 Order of Reference, which, as described above, found G.V. Izzo to be in default of the foreclosure complaint, and referred that matter to Referee Annibale solely for a computation of damages.

Relying on this order, the Urban Defendants contend that their entitlement to foreclose on the Lynbrook Property – and, by extension, the validity of the underlying Note and Mortgage – have already been established in the state court as a matter of law. Consequently, the Urban Defendants maintain that principles of collateral estoppel preclude the Plaintiffs from contesting the validity of the Note and Mortgage in this case. The Court disagrees.

"Under the doctrine of collateral estoppel, a litigant is prevented from 'relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.'" *Luo v. Baldwin Union Free Sch. Dist.*, 2017 U.S. App. LEXIS 1470, at *3-*4 (2d Cir. Jan. 27, 2017) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). "Collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and

decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.' " *Id.* at *4 (quoting *Proctor v. LeClair*, 715 F.3d 402, 414 (2d Cir. 2013)).

However, because "[c]ollateral estoppel will only apply if plaintiffs had a 'full and fair opportunity' in New York state court to litigate the issues that they now seek to relitigate in federal court," *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir. 1998), "[t]he majority view is that collateral estoppel based on default judgments is undesirable," *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 856 (E.D.N.Y. 1995) (collecting cases); *see Blohm + Voss GmbH v. M/V Olympia Explorer*, No. 05-cv-7753, 2008 U.S. Dist. LEXIS 54034, at *27-*28 (S.D.N.Y. July 14, 2008) ("As for collateral estoppel, 'the general rule is well-established that default judgments lack issue-preclusive effect' " (quoting *In re Adler, Coleman Clearing Corp. v. Gurian*, 205 F. App'x 856, 857 (2d Cir. 2006)).

In this case, because the Order of Reference was entered against the Estate without opposition, and was based, at least in part, on the Estate's initial failure to appear in the Foreclosure Action, the Court finds that the central question regarding the validity of the Note and Mortgage was not "fully and fairly litigated" in that proceeding.

This is especially true given that the Estate did eventually appear in that action, prompting the state court to deny Urban Financial's motion for a judgment of foreclosure and sale on the ground that a triable issue of fact exists with respect to the Decedent's competency to enter the subject mortgage transaction. In fact, the court issued a subsequent order vacating the Estate's default and allowing it to interpose a late answer and defend the action. Under these circumstances, the Court finds that the very issues Urban Financial claims to have been established as a matter of law, are, in fact, yet to be adjudged on the merits by any court of competent jurisdiction.

Accordingly, to the extent that the Urban Defendants seek to dismiss the amended complaint under FED. R. CIV. P. 12(b)(6) on the ground that the Plaintiffs' claims are barred by the doctrine of collateral estoppel, their motion is denied.

## C. The Standard of Review under FED. R. CIV. P. 12(b)(6)

The Court will now turn to the Defendants' contention that the amended complaint lacks sufficient factual allegations to state a plausible claim for relief.

Under FED. R. CIV. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

## D. The First Cause of Action: Civil RICO

### 1. The Applicable Pleading Standard

The RICO statute "is a complex statutory scheme," which mandates that "robust threshold requirements" be satisfied before a civil complainant can bring suit. *See Sheridan v. Mariuz*, No. 07-cv-3313, 2008 U.S. Dist. LEXIS 123409, at *14 (S.D.N.Y. Apr. 4, 2008) (Report and Recommendation), *adopted*, 2009 U.S. Dist. LEXIS 28984 (S.D.N.Y. Apr. 6, 2009).

In particular, to state a claim for damages under RICO, the Plaintiffs' pleading burden is twofold: "a plaintiff must allege [1] a violation of the substantive RICO statute, 18 U.S.C. § 1962, commonly referred to as 'criminal RICO,' and [2] injury to his business or property resulting from that violation." *Sterling Interiors Grp. v. Haworth, Inc.*, No. 94-cv-9216, 1996 U.S. Dist. LEXIS 10756, at *11 (S.D.N.Y. July 30, 1996) (citing *Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990)).

As to the first prong of this standard, namely, a violation of the substantive RICO statute, a complaint will only survive Rule 12(b) scrutiny if it specifically alleges:

(1) the existence of an enterprise which affects interstate or foreign commerce;
(2) that the defendant was "employed by" or "associated with" the enterprise;
(3) that the defendant participated in the conduct of the enterprise's affairs; and
(4) that the participation was through a pattern of racketeering activity.

*Id.* at *11-*12; *see also Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (setting forth the "constituent elements" necessary to plead a substantive RICO violation).

### 2. Application to the Facts of this Case

Collectively, the Defendants advance a number of arguments favoring dismissal. However, in resolving these motions, the Court need only consider the first of their contentions, namely, that the amended complaint fails to plausibly allege the commission of predicate criminal acts.

In this regard, "[e]stablishing that a defendant has engaged in a pattern of racketeering activity requires a showing that the defendant has committed at least two predicate acts that are among the offenses delineated in section 1961." *Colony at Holbrook v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1230 (E.D.N.Y. 1996) (Spatt, J.); *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) ("The bare minimum of a RICO charge is that a defendant personally committed or aided and abetted the commission of two predicate acts").

In this case, the Plaintiffs allege that the Defendants engaged in the predicate acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.

The Court notes that the Plaintiffs also allege that the Defendants committed forgery, perjury, and "predatory lending." *See* Am. Compl. ¶ 92. However, even assuming that these crimes were adequately pled, they are not enumerated as predicate acts under the statute, *see* 18 U.S.C. § 1961(1), and are therefore insufficient to support a RICO claim, *see Defazio v. Wallis*, 500 F. Supp. 2d 197, 206 (E.D.N.Y. July 14, 2008) (Spatt, J.) (forgery is not a predicate act); *Capasso v. Cigna Ins. Co.*, 765 F. Supp. 839, 840, n.1 (S.D.N.Y. 1991) (perjury is not a predicate act); *see also Derakhshan v.*

*Mort. Elec. Registration Sys.*, 2009 U.S. Dist. LEXIS 100505, at *13 (C.D. Ca. Oct. 13, 2009) (predatory lending by a mortgage company is not a predicate act).

"To successfully make a claim of mail or wire fraud as a predicate act, a plaintiff must allege (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Serin v. Northern Leasing Sys.*, No. 06-cv-1625, 2009 US Dist. LEXIS 130899, at *18-*19 (S.D.N.Y. Dec. 15, 2009) (citing *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)).

Further, although the liberal "notice pleading" standard found in FED. R. CIV. P. 8(a) usually governs civil RICO allegations, where, as here, the predicate acts are based on fraud, those acts "must be pleaded according to the strictures of Rule 9(b)." *Merrill Lynch, Pierce, Fenner & Smith v. Young*, No. 91-cv-2923, 1994 U.S. Dist. LEXIS 2929, at *21 (S.D.N.Y. Mar. 15, 1994) (citing *McLaughlin*, 962 F.2d at 191).

Thus, to survive dismissal, the Plaintiffs are required to "state with particularity the circumstances constituting fraud or mistake." In this regard, "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' how the misrepresentations were fraudulent; and the details that 'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (Spatt, J.) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)).

In reviewing the amended complaint in this case, the Court has accepted the alleged facts as true, and resolved all ambiguities and drawn all inferences in the Plaintiffs' favor. Even so, the allegations of predicate criminal conduct fall well below what is required to pass Rule 9(b) muster.

Initially, the Plaintiffs assert that every allegation made in support their RICO claim is based upon information and belief. *See* Am. Compl. ¶ 1a ("The allegations herein whether or not cast as such, are upon information and belief"). This admission alone is sufficient to dismiss the RICO claim under Rule 9(b). *See Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988) (noting that, except in a limited circumstance not adequately alleged here, "fraud pleadings generally cannot be based on information and belief").

In any event, even a cursory review of the Plaintiffs' allegations makes clear that the amended complaint lacks sufficient non-conclusory facts to state a legally-sufficient claim based on predicate acts of mail and/or wire fraud.

At this time, the Court pauses to repeat the observation previously set forth in its July 2016 Decision and Order, namely, that the original complaint in this action – a "dizzying 87-page, 373-paragraph" document – was "largely incoherent"; "consist[ed] substantially of . . . unsupported legal conclusions"; and contained "few factual statements," which themselves were "disjointed" and failed to "provide any intelligible foundation for the Plaintiff's claims." *Estate of Izzo*, 2016 U.S. Dist. LEXIS 86567, at *2-*3. The Court observed that, "if there [were] any well-pled facts in th[at] complaint, they [were] entombed in extraneous material, and hidden from the Court's view . . ." *Id.* at *3. Against that backdrop, the Court granted the Plaintiffs leave to file an amended complaint, subject to strict directives regarding form and content.

However, while somewhat slimmer, and devoid of some of the more egregious flaws that plagued the original filing, the amended complaint is only marginally better drawn and decidedly fails to satisfy Rule 8's basic precept.

The new pleading is 53 pages long and contains 243 numbered paragraphs, dozens of which have been sloppily copied-and-pasted without regard for recurring typographical errors, and others which ramble for a page or more without any concrete facts. Overall, the allegations are highly

repetitive; they meander haphazardly; and the totality of the pleading again fails to present a coherent factual narrative. On the contrary, only a small fraction of the allegations contain what can fairly be called assertions of fact. The rest are, again, rank speculation and unsupported legal conclusions.

As the Court has already cautioned, even without consideration of the arguments set forth in the Defendants' motions to dismiss, the Plaintiffs' failure to submit a lucid and comprehensible pleading forms an independent basis for dismissing the amended complaint in its entirety. *See id.* at *6-*7 (cautioning the Plaintiffs that "if the amended complaint contains unsupported or patently conclusory statements, similar to the original complaint . . . the amended pleading may again be dismissed").

Nevertheless, the Court finds that, once again, the facts upon which a potentially viable civil RICO claim may be based are lost in a sea of verbiage – so much so that the Court has struggled to identify what occurrences are being relied upon as predicate acts to support a violation of the statute.

Affording the amended complaint the most favorable possible construction, the Court assumes that the Plaintiffs rest their claims of mail fraud on the following categories of conduct:

(1) Unspecified mailings of the underlying mortgage documents, including the Note, Mortgage, and an accompanying Tax Affidavit (Am. Compl. ¶¶ 35-37);

(2) The mailing by Urban Financial of the August 29, 2011 default letter to G.V. Izzo, (*id.* ¶ 40); and

(3) The service and filing of numerous litigation documents in the Foreclosure Action, including the Summons and Complaint (*id.* at ¶¶ 53-54), the Notice of Pendency (*id.* at ¶ 55), a January 29, 2014 Certificate of Merit signed by Giraldo (*id.* at ¶ 56), the January 7, 2015 affidavit in support of a default judgment by Akinrele (*id.* at ¶ 57), the October 9, 2015 affidavit by Smith regarding amounts due (*id.* at ¶ 58), the Notice of Motion for a Judgment of Foreclosure and Sale (*id.* at ¶ 65), a November 10, 2015 Affirmation Regarding CPLR 3408 Settlement Conferences by Cheli (*id.* at ¶ 49), a November 10, 2015 bill of costs, signed by Cheli (*id.* at ¶ 50), a November 10, 2015 Affirmation in Support of Reasonable Attorneys' Fees by Cheli (*id.* at ¶ 51), and a November 10, 2015 Affidavit of Regularity by Cheli (*id.* at ¶ 52).

It appears that the basis for characterizing these occurrences as acts of mail fraud is that: (1) the mailings themselves contained forged documents; or (2) the act of mailing the documents falsely held out the underlying mortgage transaction to be valid. *See, e.g.*, Am. Compl. ¶ 125.

Further, the Court assumes that the Plaintiffs rest their claims of wire fraud on the following conduct:

(1) Unspecified online advertising conducted by the McCabe Law Firm, in which the firm, allegedly falsely, held its attorneys out as experts in foreclosure litigation (Am. Compl. ¶ 60);

(2) A delivery, by unspecified means, of the underlying mortgage documents from Vanguard to Urban Financial (*id.* at ¶ 83); and

(3) Unspecified telephone calls and facsimile transmissions by "the defendants, and all of them" that were made "in furtherance of the frauds" (*id.* at ¶ 125).

Evaluating these allegations, the two plausible instances of predicate conduct needed to sustain a RICO claim cannot be found.

Initially, the Court finds that the allegations in paragraphs 35 through 37 regarding certain unspecified mailings of the underlying mortgage documents fail to plausibly state a claim based on mail fraud. Contrary to Rule 9(b)'s mandate, the amended complaint fails to provide any information identifying the sender, recipient, date, or purpose of these alleged mailings. *See United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*, No. 13-cv-4933, 2016 U.S. Dist. LEXIS 121136, at *16 (E.D.N.Y. Sept. 7, 2016) (noting that "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud").

The same is true of all of the Plaintiffs' allegations of wire fraud, which are far too vague to state a cognizable claim. For example, the Plaintiffs attack the McCabe Law Firm's online advertising as fraudulent, without providing any information regarding the specific content of the advertisement; how it was false; when it was made; and how it relates to the broader scheme alleged in this case. Further, while it is logical to assume that, at some point in the course of the relevant events, Vanguard delivered the underlying mortgage documents to Urban Financial, the amended

complaint fails to specify when this delivery took place, who was involved, and what specific means of wire transmission were used. Finally, it is clear that the blanket allegation in paragraph 125, which challenges an unspecified number of telephone calls and facsimile transmissions by all of the 18 named Defendants as having been made "in furtherance of the frauds," without any related details or information, cannot succeed in plausibly supporting a theory of wire fraud.

That leaves only two instances of allegedly actionable predicate conduct in the amended complaint – namely, (1) the mailing by Urban Financial of the August 29, 2011 default letter to G.V. Izzo; and (2) the mailing of various litigation documents in the Foreclosure Action – both of which would need to pass Rule 9(b) muster to save the Plaintiffs' RICO claim. *See Buyers & Renters United to Save Harlem v. Pinnacle Grp. NY LLC*, 575 F. Supp. 2d 499, 508 (S.D.N.Y. 2008) ("At least two predicate acts of mail fraud [must be] pleaded with sufficient particularity to survive a motion to dismiss").

However, even assuming that Urban Financial's August 29, 2011 mailing satisfies the elements of mail fraud – a proposition that is questionable on the current record – the RICO claim fails because the service and filing of litigation documents in the Foreclosure Action cannot plausibly support a cognizable claim. *See Curtis & Associates, P.C. v. Law Offices of David Bushman, Esq.*, 758 F. Supp. 2d 153, 170-71 (E.D.N.Y. Dec. 15, 2010) (dismissing a RICO complaint whose predicate acts "involve[d] the mailing of litigation documents" in other lawsuits, partially on the ground that "persuasive authority in this and other jurisdictions suggests that the litigation activities alleged in th[e] Complaint cannot properly form the basis for RICO predicate acts"), *aff'd*, 443 F. App'x 582 (2d Cir. 2011); *see also Snyder v. United States Equity Corp.*, No. 12-cv-6092, 2014 U.S. Dist. LEXIS 10348, at *22-*25 (W.D.N.Y. Jan. 27., 2014) (dismissing a complaint where "the gravamen of the allegations" was "that the defendants pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt to obtain money or property to which they were not entitled"; collecting cases for the proposition that "[t]here are, in fact, a significant number of decisions, in this Circuit and in other

Circuits, which hold, in the context of Civil RICO claims based on fraudulent litigation, that a defendant's use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering").

This is especially true where, as here, the Foreclosure Action, in which most of the alleged predicate activity has taken place, remains pending.  As the district court observed in *Curtis & Assocs., P.C., supra*, "allegations that the [ongoing] state court litigation is frivolous, fraudulent, or baseless . . . without more, cannot constitute a viable RICO predicate act."  *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 172.   Rather, the court reasoned that:

> allowing the federal RICO statute to usurp underlying legitimate state court litigation as proposed by the plaintiffs would inappropriately bypass the state tribunal where the action is pending and which properly controls that proceeding.  Should plaintiffs' vague allegations of "phony" and "frivolous" litigation, "suborned perjury" and "deceit of court" have merit, plaintiffs should direct such claims to the state courts where these acts are allegedly occurring and where the underlying litigation is still pending.

*Id.* at 173-74.

In the Court's view, the same reasoning is appropriate here.   In this case, not only is the Foreclosure Action pending, but the presiding state tribunal has already entertained the same allegations regarding the Decedent's competency to enter into the subject mortgage transaction that form the basis of the Plaintiffs' complaint in this case.  Further, apparently finding those allegations to be non-frivolous, the state court has indicated its intention to have those issues fully and fairly litigated in that forum.

Thus, as was the case in *Curtis & Assocs., P.C.*, to the extent that the Plaintiffs' allegations of fraudulent state court litigation have merit, the Court finds that the civil RICO statute is an ill-fitting tool for raising them, and that the ongoing Foreclosure Action is the proper vehicle for relief.

Alternatively, even assuming that all of the alleged misconduct could support viable mail and wire fraud counts, the Plaintiffs' RICO claim would fail at this initial stage because the amended

complaint does not plausibly allege "[t]he 'gravamen' of the mail fraud offense," namely, that these acts were part of a broader scheme to defraud. *Id.* at 168.

As the Second Circuit noted in its affirmance of the district court's dismissal in *Curtis & Associates, P.C.*, *supra*, an actionable "scheme" for RICO purposes "require[s] coordination of the defendants." *Curtis*, 443 F. App'x at 585. In that case, as in this one, there was "a noted dearth of allegations suggesting that" the varied defendants "were aware or joined in any sort of fraudulent scheme beyond their own individual" involvement in the series of events leading to the plaintiff's alleged injury. *See id.* at 586. Consequently, the Court of Appeals noted that "the fraudulent 'schemes' boil[ed] down to little more than speculative and conclusory allegations that the various defendants and others worked together" toward a common nefarious purpose. *Ibid.* However, as is the case here, "[t]here [were] no facts alleged to support these implausible allegations of an overarching scheme or schemes, nor [was] a common [fraudulent] intent properly pled." *Ibid.*

In this case, other than noting that each of the Defendants was apparently involved in some discrete way in handling the Decedent's Mortgage, the amended complaint fails to set forth any non-conclusory facts to tie the Defendants to one another for purposes of establishing a shared fraudulent intent.

On the contrary, the Plaintiffs improperly paint all of the Defendants with the same broad brush, imputing generalized knowledge and intent to all of them without any supporting facts, and asserting, solely upon information and belief, "that the defendants agreed by a meeting of the minds to achieve the unlawful ends of creating and collecting unlawful debts and stealing the equity in the home of [the Decedent]." Am. Compl. ¶ 74; *see also id.* ¶ 81 (alleging, without supporting facts, that "all of the" Defendants "knew or got to know, during the occurrence of the complained of events that the Note, Mortgage and Affidavit were fraudulent and forged and agreed with each other to utilize

these forged documents for the purpose of stealing the equity of [the Decedent] in his home and to illegally collect from his estate an unlawful debt").

In the Court's view, the Plaintiffs' attempt to couple speculation with legal conclusion in the goal of shoehorning the entire evolution of the Decedent's reverse mortgage debacle into the RICO framework is patently improper and does not pass the most basic Rule 12(b)(6) scrutiny.

Accordingly, the first cause of action based on civil RICO is dismissed in its entirety.

**E.      The Second Cause of Action: Violation of the FDCPA**

The second cause of action in the amended complaint alleges a violation of the FDCPA.  In this regard, the Court notes that neither the pleading itself nor the Plaintiffs' opposing legal papers specifies which of the statute's varied provisions is alleged to have been violated.  Nor do the Plaintiffs specifically identify what conduct they allege constitutes illegal debt collection activities.

Rather, operating from the premise that the Note and Mortgage are invalid, the amended complaint simply alleges, without factual support, that all of the Defendants "are using criminal means" – presumably a reference to the mail and wire fraud claims dismissed above – to harm the property and reputation of the Decedent.  *See* Am. Compl. ¶ 201.   Allegedly, this includes "intentionally and knowingly materially misrepresent[ing]" several facts, including that the Decedent voluntarily entered into the subject reverse mortgage transaction, and that, as a result, his Estate owes an unpaid debt.  *See id.* ¶¶ 202-03.   The Defendants allegedly carried out these misrepresentations by compiling and furnishing unspecified fraudulent "forms."  *See id.* ¶ 205.

The Defendants set forth several arguments favoring dismissal, including that they are not debt collectors within the meaning of the FDCPA.  The Plaintiffs do not materially contest this position, and for good reason – the amended complaint does not even conclusorily state that any of the Defendants is a debt collector, let alone set forth sufficient facts to make it plausible that any of them meet the statutory definition set forth in 15 U.S.C. § 1692a(6).

In any event, the caselaw makes it clear that neither (1) a lending institution who originates a mortgage loan, such as Vanguard, nor (2) a loan servicing company who is assigned a defaulted mortgage but does not seek to collect the debt for an entity other than itself, such as Urban Financial, is a debt collector subject to the FDCPA's provisions. *See, e.g., Munroe v. Specialized Loan Servicing LLC*, No. 14-cv-1883, 2016 U.S. Dist. LEXIS 40716, at *16-*18 (E.D.N.Y. Mar. 28, 2016). Thus, none of the pre-foreclosure events outlined in the amended complaint in this case can plausibly support a violation of the statute.

Further, although the Law Firm Defendants may potentially be considered debt collectors, *see Rigerman v. Forster & Garbus LLP*, No. 14-cv-1805, 2015 U.S. Dist. LEXIS 32213, at *6 (E.D.N.Y. Mar. 6, 2015), the only conduct of theirs that the amended complaint can fairly be said to challenge is the commencement of foreclosure proceedings, which itself falls outside of the FDCPA's purview, *see Boyd v. J.E. Robert Co.*, No. 05-cv-2455, 2012 U.S. Dist. LEXIS 142688, at *56 (E.D.N.Y. Oct. 2, 2012) (noting that "the majority of federal courts have clarified that, unless a monetary judgment is sought against the debtor, the 'enforcement of a security interest through the foreclosure process is not a debt collection for purposes of the Act' " (quoting *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009)), *aff'd*, 2014 U.S. App. LEXIS 16620 (2d Cir. Aug. 27, 2014).

Accordingly, in the absence of supporting factual details to clarify the Plaintiffs' theory of relief, the second cause of action does not state a plausible violation of the FDCPA and must be dismissed as against the moving Defendants.

In this regard, the Court notes that the second cause of action is also alleged as against Radelman, whose entire involvement in the events underlying the amended complaint includes notarizing the Note and Mortgage. There is nothing in the amended complaint to plausibly suggest that Radelman is a debt collector within the meaning of the FDCPA, or that she took any actions

that can fairly be considered debt collection activities. Accordingly, in its discretion, the Court also dismisses the second cause of action as it relates to the Defendant Radelman.

## F. The Third and Fourth Causes of Action: Violations of TILA and Its Implementing Regulations

The third cause of action in the amended complaint alleges that Urban Financial violated the provisions of TILA, namely, 15 U.S.C. § 1641(g), by failing to provide the Estate with timely notice of the assignment of the Mortgage. Similarly, the fourth cause of action alleges that all of the Defendants violated TILA's implementing regulations, namely, 12 C.F.R. § 266.33, by failing to make certain mandatory disclosures regarding the alleged reverse mortgage transaction to the Decedent.

However, the "statute of limitations for causes of action brought under TILA . . . is one year from the date of the alleged violation." *Dins v. Bank of Am.*, No. 16-cv-5741, 2017 U.S. Dist. LEXIS 19937, at *8 (S.D.N.Y. Feb. 13, 2017) (quoting *Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-2463, 2015 U.S. Dist. LEXIS 18124, at *24 (S.D.N.Y. Feb. 13, 2015)); *see also* 15 U.S.C. § 1640(e). Consequently, both causes of action are time-barred.

In particular, as to the third cause of action, section 1641(g)(1) of TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." Here, the amended complaint alleges that the Assignment occurred on September 27, 2013, when MERS, as nominee for Vanguard, assigned the Mortgage to Urban Financial. Thus, the applicable limitations period expired one year later, on September 27, 2014, which is more than a year before this action was commenced.

Further, as to the fourth cause of action, the TILA regulation pertaining to mandatory disclosures apparently requires such disclosures to be made at or about the time that the reverse mortgage transaction is consummated. Here, the Note and Mortgage were purportedly executed – validly or not – on April 30, 2011. Thus, applying the same one-year statute of limitations referenced

above, the Court finds that any potential claim arising from the Defendants' failure to make the required disclosures at the time of the transaction expired on April 30, 2012, more than three years prior to the commencement of this action.

Accordingly, the Court finds that the third and fourth causes of action, which are based on violations of TILA and its implementing regulations, are time-barred and must be dismissed.

G.      **The Fifth Cause of Action: Violation of the Home Equity Conversion Mortgage Statute**

The fifth cause of action in the amended complaint alleges a violation of the federal regulations relating to the Home Equity Conversion Mortgage statute, on the theory that the Defendants failed to provide to the Decedent mandatory loan counseling in connection with the reverse mortgage transaction.

However, in response to the Defendants' motions, the Plaintiffs voluntarily withdrew that claim.  *See* Aug. 29, 2016 Affirmation in Opposition to Motions to Dismiss by David A Bythewood, Esq., DE [102], ¶ 28; *see also* Aug. 12, 2016 Affirmation in Opposition to Motion of Motion [*sic*] of Vanguard Funding, Joseph Filipone and Richard Cacciatore to Dismiss the First Amended Complaint by David A. Bythewood, Esq., DE [98], ¶ 10.

Accordingly, the fifth cause of action is dismissed.

H.      **The Pendent State Law Claims**

The sixth cause of action in the amended complaint alleges that all of the Defendants violated section 349 of the New York General Business Law.  The seventh and eighth causes of action allege theories of negligence and negligent supervision under New York law.

However, having dismissed all of the claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 267-68 (E.D.N.Y. 2015) ("Where, as here, any federal 'claims are eliminated before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (citations omitted); *Spiteri v. Russo*, No. 12-cv-2780, 2013 U.S. Dist. LEXIS 128379, at *235-*237 (E.D.N.Y. Sept. 7, 2013) (collecting cases for the proposition that "[c]ourts routinely decline to exercise supplemental jurisdiction where the only remaining claims are state law claims . . ."), *aff'd*, 622 F. App'x 9 (2d Cir. 2015).

Accordingly, the Plaintiffs' sixth, seventh, and eighth causes of action are dismissed without prejudice to refiling in an appropriate forum.

I. **As to the Plaintiffs' Request for Leave to File a Second Amended Comlplaint**

Finally, the Court notes that the Plaintiffs' request for leave to file a second amended complaint, which is contained in an attorney affirmation submitted in opposition to the Defendants' motions to dismiss, is denied as procedurally improper. *See Aiola v. Malverne Union Free Sch. Dist.*, 115 F. Supp. 3d 321, 343 (E.D.N.Y. 2015) (Spatt, J.) (noting that " 'a bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under FRCP 15" (quoting *Curry v. Campbell*, No. 06-cv-2841, 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012))); *see also Love v. Premier Util. Servs., LLC*, No. 15-cv-5698, 2016 U.S. Dist. LEXIS 63566, at *19-*20 (E.D.N.Y. May 13, 2016) (Spatt, J.); *Melanson v. United States Forensic, LLC*, No. 15-cv-4016, 2016 U.S. Dist. LEXIS 58136, at *48-*49 (E.D.N.Y. Apr. 30, 2016) (Spatt, J.); *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2015 U.S. Dist. LEXIS 118679, at *12-*14 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.).

However, even assuming that the Plaintiffs had filed a proper motion under Rule 15(a) for leave to file a second amended complaint, the Court would deny that motion as futile. Through two wholly inadequate pleadings, the Plaintiffs have demonstrated an abject inability to present facts – as opposed to accusations and condemnations – that plausibly support a legally sufficient claim. In

doing so, the Plaintiffs have caused the Court and the Defendants to expend substantial time and resources responding to facially deficient filings.

Further, the Plaintiffs have demonstrated what is at best an inability and at worst an unwillingness to follow the Court's rules. For example, in its July 2, 2016 dismissal order, the Court determined that, "given the extraordinary length and breadth of the original complaint," it was necessary to "place restrictions on the form of any amended pleading." *Estate of Izzo*, 2016 U.S. Dist. LEXIS 86567, at \*5-\*6. Thus, the Court expressly directed the Plaintiffs to "refrain from using legal conclusions, [ ] arguments, and inflammatory accusations as factual allegations." *Id.* at \*6-\*7. As noted above, even a passing review of the amended complaint makes abundantly clear that this directive was ignored.

Further, observing that the Plaintiffs' failure to heed the Federal Rules of Civil Procedure, the Eastern District's Local Civil Rules, and this Court's Individual Motion Practices had caused the motion practice engendered by the original complaint to spiral out of control, the Court wrote, in relevant part, that:

> Individual Rule IV(B) requires that motion papers include legal memoranda, which, under subsection (i), are subject to strict page limits. In opposition to the Defendants' motions to dismiss, the Plaintiff did not file legal memoranda. Instead, he filed a series of attorney affirmations ranging in length from 33 to 63 pages, in which he made certain alleged legal arguments, and to which he included a total of 234 additional pages of documentary evidence. These filings apparently violate the Court's rules, and future noncompliant filings will be rejected without further notice to the parties.

*Id.* at \*7-\*8.

However, despite the Court's clear directives, and in repeated contravention of Rule IV(B), the Plaintiffs again failed to submit legal memoranda in response to the second round of motions to dismiss. Rather, the Plaintiffs again relied solely on attorney affirmations by their counsel, which, although pared down to satisfy the Court's page limits, included almost no citations to legal authority or legal analysis; set forth extensive factual matter not usually appropriate for consideration under Rule 12(b)(6); and reattached numerous pages of documentary evidence that

were not attached to the amended complaint. Given the Plaintiffs' sole reliance on impermissible attorney affidavits, the Court arguably would have been justified in rejecting those submissions and deeming the Defendants' motions to dismiss as unopposed. *See, e.g., HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 U.S. Dist. LEXIS 141252, at *15-*16 (S.D.N.Y. Sept. 27, 2012) (rejecting an attorney affirmation "which [was] essentially a regurgitation of the factual allegations" in the complaint and noting that "it is generally improper to consider factual averments or legal arguments contained in an attorney affidavit on a 12(b)(6) motion" (citing cases)).

Under these circumstances, the Court finds that the Plaintiffs have had their day in federal court, and now it is over.

Accordingly, the Court's decision to dismiss the Plaintiffs' federal causes of action is with prejudice.

### III.  CONCLUSION

Based on the foregoing, the Court grants the Defendants' motions to dismiss the federal claims – namely, the first through fifth causes of action – over which the Court has original jurisdiction. In this regard, although the Defendant Radelman has filed neither an answer to the amended complaint nor a pre-answer motion to dismiss, in its discretion, the Court *sua sponte* dismisses the federal claims as against her on the ground that they fail to state plausible claims upon which relief may be granted.

Further, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action, which are dismissed without prejudice to refiling in an appropriate forum.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated:  Central Islip, New York
      March 30, 2017          */s/ Arthur D. Spatt*_____
                       ARTHUR D. SPATT
                       United States District Judge